

**SO ORDERED.**

**SIGNED this 26 day of September, 2012.**

*Stephani W. Humrickhouse*
_____
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**
_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| TP, INC., | 10-01594-8-SWH |
| DEBTOR | |
| | |
| TP, INC., | ADVERSARY PROCEEDING NO. |
| Plaintiff | 11-00112-8-SWH |
| v. | |
| BANK OF AMERICA, N.A. and JONATHAN P. JOYNER, | |
| Defendants. | |

### ORDER DENYING MOTION TO DISMISS AND
### GRANTING IN PART MOTION TO STAY

The matter before the court is the Motion to Dismiss, or in the Alternative, to Stay Based on

Arbitration Agreement filed by defendants Bank of America, N.A. ("BOA") and Jonathan P. Joyner

("Joyner"). A hearing was held in Raleigh, North Carolina, on June 5, 2012.

**BACKGROUND**

On or about January 10, 2003, TP entered into a Master Loan Agreement and a Promissory Note with BOA, secured by a deed of trust and security agreement. The Master Loan Agreement and Promissory Note contain arbitration clauses. The loan was extended and increased through TP's execution of loan extension agreements, loan modification agreements, and amendments to the deed of trust and security agreement. No modifications have been made to the arbitration clauses. Joyner was a senior vice president of BOA who, beginning in 2002, worked with TP regarding its loans with the bank.

On July 7, 2009, BOA filed a complaint against TP, the Bryants (owners of TP and guarantors of its debt to BOA) and HP, Inc. (a company owned by Ronald Bryant) in Pender County Superior Court for breach of the Promissory Note. It obtained ex parte orders of attachment against TP and the Bryants and issued various notices of garnishment to TP's creditors and business associates ancillary to the action on the note. On August 10, 2009, the defendants filed a pro se answer and counterclaims against BOA for breach of the implied covenant of good faith and fair dealing. On September 28, 2009, BOA filed a motion to dismiss the counterclaims, which was heard before the Superior Court on October 5, 2009. The parties presented the court with a consent order that was entered by the court on October 8, 2009, dismissing TP, HP, and the Bryants' counterclaims without prejudice. The consent order recognized that the counterclaims were submitted pro se, that the defendants had since retained counsel, and that the defendants intended to later seek leave of court to amend their pleadings. The counterclaims were never resubmitted or amended.

On March 1, 2010, TP filed a chapter 11 bankruptcy petition, which stayed the Pender County action as against it, leaving only a proceeding against the Bryants and HP. On

2

September 23, 2010, BOA filed a motion for summary judgment against the non-debtor defendants. On October 7, 2010, the court entered summary judgment against the Bryants as guarantors of the TP debt and against HP in the amount of $24,739,548.88.

On March 31, 2011, TP initiated the present adversary proceeding against BOA and Joyner. On May 4, 2011, BOA filed a motion to dismiss, or in the alternative, to stay the adversary proceeding based upon the arbitration provisions in the loan documents. BOA asserts its right to arbitration, arguing that TP's claims are covered by the arbitration agreement, are mostly non-core claims, and therefore the bankruptcy court should stay the action in favor of arbitration pursuant to Section 3 of the Federal Arbitration Act. On May 25, 2011, TP responded to BOA's motion contending that BOA has waived its right to arbitrate and that compelling arbitration would substantially prejudice it.

Upon the joint request of the parties, on June 21, 2011, the court entered a Consent Order Regarding Mediation and Continuance of Hearing in which mediation was ordered and the hearing on BOA's motion to dismiss was continued. Ultimately, the mediation failed. In the meantime, the Supreme Court decided Stern v. Marshall, 131 S. Ct. 2594 (2011). A status conference was held on March 19, 2012, during which the effect of the Supreme Court's decision was discussed and a briefing schedule was set. Supplemental memoranda of law were filed by BOA on April 13, 2012 and May 31, 2012, and by TP on April 13, 2012, April 20, 2012 and May 30, 2012.

## DISCUSSION

Two threshold issues are presented to the court: 1) does the arbitration provision cover the types of causes of action asserted by TP; and 2) has BOA waived the arbitration clause? Only after

those issues have been resolved, can the court consider BOA's request to compel arbitration in lieu of bankruptcy court determination of the adversary proceeding.

<u>The Scope of the Arbitration Provisions</u>

The arbitration provision at issue is found in the Master Loan Agreement and provides as follows:

> Any controversy or claim between or among the parties hereto including but not limited to those arising out of or relating to this Loan Agreement or any related agreements or instruments, including any claim based on or arising from an alleged tort, shall be determined by binding arbitration in accordance with the Federal Arbitration Act . . .

Master Loan Agreement, ¶ 10.12. Federal courts view a motion to compel arbitration in light of the strong federal and state policy favoring arbitration. <u>See</u> <u>e.g.</u>, <u>Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.</u>, 380 F.3d 200, 204 (4th Cir. 2004). The Federal Arbitration Act ("FAA") establishes that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983) (emphasis added).

The adversary proceeding sets forth twelve causes of action:[1] 1) constructive fraud; 2) fraud; 3) fraud in the inducement; 4) rescission; 5) breach of fiduciary duty; 6) negligence; 7) negligent misrepresentation; 8) tortious interference with contractual relationships and business opportunities; 9) breach of contract/implied covenant of good faith and fair dealing; 10) unfair and deceptive trade practices; 11) alter ego/insider liability; and 12) equitable subordination/recharacterization.

---

[1] The complaint contains claims for relief numbered "First" through "Eleventh," but there are two claims for relief labeled as the "Fifth."

The arbitration clause purports to cover any dispute between the parties, even those unrelated to the loan relationship. The language is broad and all encompassing, and in accordance with the majority of courts who have evaluated the scope of such provisions, the court finds that all of the causes of action asserted by the debtor are covered by the arbitration provisions. See, e.g., Cara's Notions v. Hallmark Cards, Inc., 140 F.3d 566, 569 (4th Cir. 1998) (finding that an "extremely broad arbitration clause," which called for arbitration of "[a]ny controversy or claim arising out of or relating to . . . any aspects of the relationship," covered all conflicts between the parties); Levin v. Alms and Assocs., Inc., 634 F.3d 260, 267 (4th Cir. 2011) (holding, in light of the presumption in favor of arbitrability, that broad language referring to "[a]ny dispute" encompassed any disputes between the parties, past or present); Wachovia Bank v. Schmidt, 445 F.3d 762 (4th Cir. 2006) (holding that an arbitration clause encompassing all disputes under a contract covers any dispute between the parties that has a significant relationship to the contract).

Waiver

The court turns to the question of whether BOA has waived its rights under the arbitration clause. TP contends that BOA waited two years to assert the right to arbitration, and that it was prejudiced due to BOA's delay. TP also argues that it was prejudiced by the activities undertaken by BOA in the state court action. Particularly, TP points to (1) the dismissal of the counterclaim in the state court action; (2) the attachment and garnishment orders obtained in the state court action, and (3) the entry of summary judgment against the non-TP defendants in the state court action.

Waiver of the right to arbitrate is "not to be lightly inferred" and the party opposing arbitration bears a heavy burden of proving waiver. MicroStrategy, Inc. v. Lauricia, 268 F.3d 244,

249 (4th Cir. 2001); <u>Patten Grading</u>, 380 F.3d 200 (4th Cir. 2004); <u>Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.</u>, 96 F.3d 88, 95 (4th Cir. 1996).

Under Section 3 of the FAA, a party loses its right to arbitrate if it is in "default" in proceeding with such arbitration. 9 U.S.C. § 3. Default in this context resembles waiver, but due to the strong federal policy favoring arbitration, courts have limited the circumstances that can result in statutory default. <u>Maxum Founds., Inc. v. Salus Corp.</u>, 779 F.2d 974, 981 (4th Cir. 1985). Default only occurs when the moving party "so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." <u>Microstrategy</u>, 268 F.3d at 249 (internal citations omitted). Sufficient prejudice may arise when the party asserting the right to arbitration actively participates in litigation in a manner inconsistent with that right. <u>Maxum</u>, 779 F.2d at 981. Actual prejudice is required. <u>Microstrategy</u>, 268 F.3d at 250; <u>Patten Grading</u>, 380 F.3d at 206.

The extent of the moving party's trial-oriented activity is a material factor in assessing whether the other party would be prejudiced. <u>Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.</u>, 817 F.2d 250, 252 (4th Cir. 1987). However, even if the party seeking arbitration has aggressively invoked the litigation machinery, waiver has not occurred unless the opposing party suffers actual prejudice. <u>Microstrategy</u>, 268 F.3d at 249. "Neither delay nor the filing of pleadings by the party seeking a stay will suffice, without more, to establish waiver of arbitration." <u>Fraser</u>, 817 F.2d at 252. The factors relevant to the prejudice inquiry may include the

> timeliness of the motion to compel arbitration, the degree to which the merits of the nonmovant's claims have been contested by the party moving for arbitration, whether the non-movant is otherwise aware of the movant's intention to seek arbitration, the extent of non-merits motion practice that has transpired, the movant's assent to the trial

6

court's pretrial orders, and the degree to which the parties have engaged in discovery.

Zimmer v. CooperNeff Advisors, Inc., 523 F.3d 224, 231 (3d Cir. 2008).

TP argues that because BOA waited two years from the time that it initiated its state court action against the debtor and related entities to assert a right to arbitration, BOA's motion was untimely and that it has been thereby prejudiced. Even if the two year delay suggested by TP did, in fact occur, there is no evidence that such delay caused TP to suffer actual prejudice. As stated above and as noted by TP in its response, short delays should be heavily weighed against a finding of waiver and longer delays without evidence of prejudice do not constitute waiver. Plaintiff's Mem. of Law, Docket No. 11, p. 21. TP cites a number of cases in which a delay of 3 to 15 months in pursuing arbitration was found to be sufficient to support a finding of waiver.[2] However, in the majority of those cases, the delay occurred in the context of a single proceeding involving two parties. For example, in Nino v. Jewelry Exchange, Inc., 609 F.3d 191 (3d Cir. 2010), an individual brought a discrimination suit against his former employer in district court, the matter was litigated for 15 months, and only then did the employer move to compel arbitration. On the other hand, in MicroStrategy, Inc. v. Lauricia, 268 F.3d 244, 249-51 (4th Cir. 2001), the Fourth Circuit determined that no meaningful delay occurred where an employer filed three separate actions against an employee before seeking arbitration six months after filing the first action. In that case, the court noted that the arbitration request was made one month after the employee filed her own complaint

---

[2] See Nino v. Jewelry Exchange, Inc., 609 F.3d 191, 208 (3d Cir. 2010); American Reliable Ins. Co. v. Stillwell, 212 F. Supp. 2d 621 (N.D.W.Va. 2002), reconsideration denied, aff'd, 336 F.3d 311 (4th Cir. 2003); Matter of Arbitration Between S & R Co. of Kingston and Latona Trucking, Inc., 984 F. Supp. 95 (N.D.N.Y. 1997), aff'd, 159 F.3d 80 (2nd Cir. 1998), cert. dismissed 528 U.S. 1058 (1999); Viking Packaging Technologies, Inc. v. Prima Frutta Packing, Inc., 629 F. Supp. 2d 883 (E.D. Wis. 2009).

7

against the employer, and that the record did not contain evidence of prejudice caused by the delay in and of itself. In the present case, although the time between the first action filed by BOA and the arbitration request was nearly two years, intervening factors occurred in that TP voluntarily dismissed its fraud related claims in a counterclaim to BOA's state court action, and TP filed a bankruptcy petition, staying that action. Further, BOA sought arbitration 34 days after TP filed its complaint initiating this proceeding, which is centered around fraud rather than collection on a debt. While acknowledging that the two-year overall time period is lengthy, the court finds that this delay, standing alone, does not support a finding of prejudice. This is not a case in which BOA filed a complaint against a single defendant on a particular set of issues, litigated the case for two years, and then filed a motion to compel arbitration. Instead, BOA sought arbitration 34 days after the filing of TP's complaint, which raised issues significantly different from those raised by BOA in its initial state court action.

TP next argues that BOA waived its arbitration rights by virtue of its conduct during the litigation in the state court action. TP contends that BOA acknowledged its right to assert its fraud-related claims in court when it obtained a consent order dismissing the counterclaims asserted by TP based on TP's counsel's indication that it intended to later seek leave of court to amend its pleadings. Accordingly, the counterclaims were dismissed without prejudice to TP. TP argues that by doing so, BOA acknowledged TP's right to seek leave of court to file its claims instead of being required to seek arbitration of those claims and thus waived its right to arbitration.

However, TP fails to show what actual prejudice it suffered from the dismissal. The counterclaim was dismissed <u>without</u> prejudice. The dismissal was <u>consented to</u> by TP's counsel at that time. TP could reassert those claims at some later time, and did in fact do so by way of

initiating an adversary proceeding in this court.  There were no contested hearings, discovery or briefing undertaken on this issue.  TP did not incur substantial expense in obtaining the dismissal. In fact, even if the parties had engaged in some level of discovery or pretrial activity, or incurred some expense during the pre-trial or trial process, that would not necessarily support a finding of waiver.  See e.g. Patten, 380 F.3d at 206-07 (finding that the amount of discovery undertaken, namely, the exchange of interrogatories and request for production of documents, was not sufficient to support waiver); Microstrategy, 268 F.3d at 254 (finding that the moving party did not waive the right to arbitration even though litigation of the prior claims involved many motions, responses, depositions and other procedural maneuvers).

TP also argues that BOA took advantage of the court forum by securing attachment and other supplemental orders which were not otherwise available within the arbitration process and thus deprived TP of the use and pecuniary benefits of the property obtained by those supplemental litigation processes for the duration of this dispute.  Obtaining an attachment order could be a factor for the court to consider in determining whether a party has been prejudiced.  See Expofrut v. M/V ACONCAGUA, 280 F. Supp. 2d 374 (E.D. Pa. 2003) (filing of various ex parte pleadings to effect the attachment was a factor in finding waiver); Zimmer, 523 F.3d at 231 (reasoning that whether the court issued an order or not was a factor for the court to consider).  However, even in these cases, the court noted that the dispositive question is whether the party objecting to the arbitration has suffered actual prejudice or not by the use of the litigation process.  See, e.g., Zimmer, 523 F.3d at 231 (stating that "'prejudice is the touchstone for determining whether the right to arbitrate has been waived' by litigation conduct") (citation omitted).  Otherwise, a party does not waive its right to arbitration even if the attachment is only available within the litigation process and may indicate

a party's intention to use litigation tools. TP cannot show actual prejudice as a result of BOA obtaining attachment and garnishment orders. Pursuant to the court's Order Directing Turnover of Property of the Debtor's Estate, the rental income and proceeds derived from the lease of real property (including improvements) attached during the state court litigation have been turned over to TP. See Case No. 10-01594-8-SWH, Docket No. 102. TP's chapter 7 trustee has continued to collect the rental income and other revenues and those monies are being held for its benefit. In fact, according to the Master Loan Agreement, TP agreed that no "provisional or ancillary remedies shall constitute a waiver of the right of any party . . . to arbitrate the merits of the controversy or claim occasioning resort to such remedies." Master Loan Agreement, ¶ 10.12(b). It is difficult to say TP was prejudiced by that to which it agreed.

Finally, TP argues that BOA obtained a final judgment finding that TP had defaulted on a valid debt, and this judgment impaired TP's legal position by preventing it from disputing the validity or enforceability of the debt before an arbitrator or the court. However, the records show otherwise. BOA has already obtained orders and judgments which found the existence of a valid debt in the foreclosure proceedings in Pender County and Onslow County. TP did not appeal those orders, and they became final.[3] Therefore, there is no causal link between BOA obtaining summary judgment and the claim that prejudice resulted from the finding that the debt was valid.

Moreover, even assuming that prior orders found the existence of a valid debt, TP is not collaterally estopped from challenging this finding if it did not have a full and fair opportunity to

---

[3] BOA did not waive its right to arbitration by engaging in the judicial foreclosure process because the Master Loan Agreement provides that the "maintenance of an action for foreclosure" shall not "constitute a waiver of the right . . . to arbitrate the merits of the controversy or claim occasioning resort to such remedies. Master Loan Agreement, ¶ 10.12(b).

litigate that issue. Allen v. McCurry, 449 U.S. 90, 94-95, 101 S. Ct. 411, 66 L.Ed. 308 (1980). According to the record, summary judgment was only entered against the non-TP defendants. The state court action against TP was pending at the time of the filing of the petition by TP on March 1, 2010. It was not until September 23, 2010 that BOA filed a motion for summary judgment against the non-TP defendants and obtained the judgment on October 7, 2010. TP was not involved in this summary judgment proceeding. Accordingly, any issues decided in the summary judgment order are not preclusive to TP. TP still has an opportunity to litigate the issue of the validity of the debt.

In conclusion, TP does not satisfy its heavy burden of establishing any actual prejudice from BOA's activities in prior litigation, and BOA has not waived its right to arbitration. Inasmuch as BOA has not waived the arbitration provisions in the loan documents, the court must now determine whether the contractual right to arbitration supersedes the bankruptcy court's authority to determine the dispute.

Federal Arbitration Policy

Arbitration provisions "generally are favored in federal courts. In bankruptcy proceedings, however, whether a proceeding is a 'core proceeding' as defined by 28 U.S.C. § 157(b) generally determines whether an arbitration clause can be enforced." D&B Swine Farms, Inc. v. Murphy-Brown, LLC, 430 B.R. 737, 741 (Bankr. E.D.N.C. 2010), citing White Mountain Mining Co., LLC v. Congleton, LLC, 403 F.3d 164, 169 (4th Cir. 2005) and Blanchard Transp., 2008 WL 619379 at *1 (Bankr. E.D.N.C. 2008). More particularly, in the Fourth Circuit, controlling precedent establishes that "[a]rbitration is inconsistent with centralized decision-making because permitting an arbitrator to decide a core issue would make debtor-creditor rights 'contingent upon an arbitrator's ruling' rather than the ruling of the bankruptcy judge assigned to hear the debtor's case."

11

White Mountain, 403 F.3d at 169 (internal citation omitted), quoted in D&B Swine Farms, 430 B.R.

at 741. In the bankruptcy context, then, "the burden is on the party opposing arbitration to show that

Congress intended to 'limit or prohibit waiver of a judicial forum for a particular claim' under the

Federal Arbitration Act." D&B Swine Farms, 430 B.R. at 741, construing Shearson/Am. Express,

Inc. v. McMahon, 482 U.S. 220, 226 (1987), as quoted in Blanchard Transp., 2008 WL 619379

at *1. Thus, if the matter is non-core, it is generally referred to arbitration consistent with the policy

in favor of arbitration; however if a core proceeding is at issue, the policy in favor of centralized

determination in the bankruptcy court generally prevails.

     In light of this dichotomy between bankruptcy and arbitration policy, the court must evaluate

each cause of action in the present adversary proceeding to determine whether it is a core

proceeding.  The bankruptcy court has authority to "hear and determine all cases under title 11 and

all core proceedings arising under title 11, or arising in a case under title 11 . . . and may enter

appropriate orders and judgments."  28 U.S.C. § 157(b)(1); Stern, 131 S. Ct. at 2604; Yellow Sign,

466 B.R. at 765.  Section 157(b)(2) contains a list of sample core proceedings, and these proceedings

include, but are not limited to, the "allowance or disallowance of claims against the estate" along

with "counterclaims by the estate against persons filing claims against the estate."  28 U.S.C. §

157(b)(2); Stern, 131 S. Ct. at 2604; Yellow Sign, 466 B.R. at 765-66.  Although some courts

consider claims that arise in pre-petition litigation and are used to challenge a creditor's proof of

claim to be examples of core proceedings under § 157(b)(2), other courts have found that "[p]re-

petition common law actions for a claim requiring adjudication of factual disputes unrelated to

bankruptcy are not core claims.  These claims are private rights because they are 'state law action[s]

independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the

12

creditor's proof of claim in bankruptcy.'" In re Fairfield Sentry Ltd. Litigation, 458 B.R. 665, 688 (S.D.N.Y. Sept. 19, 2011) (quoting Stern, 131 S. Ct. at 2611); see also Burns v. Dennis (In re: Southeastern Materials, Inc.), 467 B.R. at 362-63 (Bankr. M.D.N.C. 2012) (citing Granfinanciera v. Nordberg, 492 U.S. 33, 56 (1989)) (holding that "common-law actions to augment the size of the estate involving disputed facts to be determined by a jury are not core"); Yellow Sign, 466 B.R. at 767 n.19 (noting authority to the effect that common law actions independent of federal bankruptcy law are not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy).

Some courts have found that although an action was initiated by a complaint rather than a traditional counterclaim, "such actions are in the nature of a counterclaim when asserted against parties who have filed proofs of claim in the bankruptcy case." Shaia v. Taylor (In re Connelly), ___ B.R. ___, 2012 WL 1098431 at *5 (Bankr. E.D. Va. 2012) (quoting Fort v. Suntrust Bank (In re Int'l Payment Grp., Inc.), 2011 WL 5330783 at *2 (Bankr. D.S.C. 2011)); see also Blackshire v. Litton Loan Servicing, L.P., 2009 WL 426130 at *3 (S.D. W.Va. 2009) (explaining that plaintiff's claims based in state law were core proceedings because the claims were essentially counterclaims against creditors who had filed proofs of claim in the bankruptcy proceeding; furthermore, because the plaintiff's claims for relief arose from the same transaction upon which the creditor's claims against the estate were based, the adversary proceeding constituted a counterclaim under § 157(b)(2)(C)). This court agrees that TP's claims against BOA are statutory core claims under § 157(b)(2) because they are counterclaims by the estate against persons filing claims against the estate. These claims were filed via complaint initiating this adversary proceeding but they now function as counterclaims to the claims filed by BOA against the estate.

13

Although inartfully presented as counterclaims to the state court action, the gist of those claims are substantially similar to the claims asserted by TP in this adversary proceeding and are intended by way of defense,  or as a set off,  to the claim filed by BOA or seek affirmative relief. These claims will therefore be treated as counterclaims asserted by the debtor to the claim filed by the creditor, therefore the claims asserted by TP are statutorily core.  However, in light of <u>Stern v. Marshall</u>, the court must determine whether the claims are constitutionally core.

<u>Ramifications of Stern v. Marshall on Bankruptcy Courts' Authority to Enter Final Orders in Core Proceedings</u>

In the recent case of <u>Stern v. Marshall</u>, the Supreme Court found that in certain instances, bankruptcy courts cannot constitutionally render final orders on proceedings deemed core under § 157(b)(2). <u>Stern</u>, 131 S.Ct. at 2608; <u>Yellow Sign</u>, 466 B.R. at 767.  More specifically, the Court found that while bankruptcy courts have the statutory authority to enter final judgments on a debtor's counterclaims against persons filing claims against the estate pursuant to the plain language of § 157(b)(2)(C), bankruptcy courts may not constitutionally enter final orders in non-bankruptcy matters that are based in common law or state law, or that would not necessarily be resolved in the claims allowance process in bankruptcy.  However, the ruling in <u>Stern</u> does not prohibit the estate from bringing core counterclaims based in state law so long as the resolution of the counterclaim is necessary to the determination of whether a creditor's claim should be allowed in a bankruptcy case. <u>Spanish Palms Mktg, LLC v. Kingston (In re Kingston)</u>, 2012 WL 632398 at *2 (Bankr. D. Idaho 2012); <u>see also</u> <u>City of Sioux City v. Civic Partners Sioux City, LLC (In re Civic Partners Sioux City, LLC)</u>, 2012 WL 761361 at *8-10 (Bankr. N.D. Iowa  2012) (explaining that <u>Stern</u> did not completely eliminate state-law counterclaims by the estate from being a core proceeding, but

14

rather provided guidance on how broadly these counterclaims could reach without exceeding constitutional limitations).

In order to determine whether a matter is constitutionally core, then, a bankruptcy court looks to the two-prong test derived from the Court's decision in <u>Stern</u>. The first prong asks whether the action at issue stems from the bankruptcy itself, and the second asks whether the issue would "necessarily be resolved in" the claims allowance process. <u>Stern</u> at 2618; <u>Yellow Sign</u>, 466 B.R. at 768. If *either* of the prongs in the <u>Stern</u> test are met, then the matter is constitutionally core. <u>Id.</u>; <u>Burns</u>, 467 B.R. at 348; <u>Yellow Sign</u>, 466 B.R. at 768. It logically follows that if no prongs are met, then the matter is not core.

      1.   <u>Constructive Fraud</u>

TP's first claim for relief, for constructive fraud, asserts that BOA and Joyner compelled and/or influenced TP to purchase lots owned by Joyner, using TP's line of credit from BOA, resulting in substantial profits for BOA and Joyner at TP's expense. This claim does not stem from the bankruptcy itself because it first arose in state court and is based on state law, and thus does not satisfy the first prong of <u>Stern</u>.

To assess the latter half of the <u>Stern</u> test, courts generally look to see if a "common nucleus of law and fact" exists to inextricably intertwine the claims and counterclaims. <u>McElwee v. Scarff Bros., Inc. (In re McElwee)</u>, 469 B.R. 566, 576-77 (Bankr. M.D. Pa. 2012); <u>see</u> <u>also</u> <u>Tolliver v. Bank of Am. (In re Tolliver)</u>, 464 B.R. 720, 736 (Bankr. E.D. Ky. 2012) (explaining that the court in <u>Stern</u> looked at not only the "factual overlap of the claim resolution and the counterclaim, but also the legal elements which must be determined to resolve the claim and the counterclaim and the remedies sought by the counterclaim and the impact on the claims allowance process"). Furthermore, for a

counterclaim to be necessarily resolved in ruling on the proof of claim, the relationship must be such that resolution of the counterclaim would alter the amount sought by the claimant. See In re Olde Prairie Block Owner, 457 B.R. 692, 698-99 (Bankr. N.D. Ill. 2011) (finding that two counterclaims for breach of contract had to be resolved in ruling on the proof of claim because one sought 'rescission' based on economic duress and the other sought damages for a breach of good faith and fair dealing, which would reduce the amount claimed by debtor). Moreover, a counterclaim that seeks to reduce the amount that debtors owe to a claimant should be contrasted with the situation where a bankruptcy estate is seeking affirmative monetary relief from a claimant to augment the bankruptcy estate. McElwee, 469 B.R. at 576.  In other words, a counterclaim by the estate based in state law must seek to directly reduce or recoup the amount claimed in order to be resolved in ruling on the proof of claim.  Applying this type of test, a counterclaim by the bankruptcy estate that seeks affirmative monetary relief to augment the estate but does not directly modify the amount claimed would not qualify as a claim to be resolved in ruling on the proof of claim.  Finally, because this type of counterclaim would not be resolved in the claims allowance process, the claim would fail the second prong of Stern and be deemed a non-core proceeding.

In this first claim, TP asserts that BOA and Joyner took advantage of their position of trust in the lending relationship in order to benefit from larger profits from TP's increased use of the line of credit.  Although this cause of action stems from the transactions giving rise to BOA's claim, it will not affect the calculation of the amount of BOA's proof of claim.  Instead, it appears that the bankruptcy estate seeks affirmative monetary relief in order to augment the size of the estate, as opposed to asking for a modification of the amount claimed by BOA (though that would indirectly augment the estate).  As such, this claim is not inextricably intertwined with BOA's proof of claim

16

and would not necessarily be resolved in the claims allowance process, thereby failing to satisfy the second prong of <u>Stern</u>.  Because it is therefore not a core proceeding, this claim will be referred to arbitration.

> 2.  <u>Fraud</u>

In its second claim for relief, TP asserts that during the course of the lending relationship, and particularly between 2002 and 2008, BOA and Joyner made false representations to TP and/or concealed facts with the intent to deceive TP, and that TP reasonably relied on such representations to its detriment.  As with the claim for constructive fraud, this claim does not stem from the bankruptcy itself because it first arose in state court and is based on state law, and thus does not satisfy the first prong of <u>Stern</u>.

Much like the first claim for constructive fraud, this cause of action arises out of the transactions underlying BOA's claim, but will not affect the calculation of the amount of BOA's proof of claim.  As such, this claim would not necessarily be resolved in the claims allowance process and does not satisfy the second prong of <u>Stern</u>.  This claim will be referred to arbitration.

> 3.  <u>Fraud in the Inducement</u>

TP's third claim, for fraud in the inducement, asserts that BOA fraudulently induced TP to obtain the line of credit.  Based on this alleged fraud, TP contends there was no mutuality and/or consideration for the various loan instruments executed by TP, rendering the instruments unenforceable.  Although this claim fails the first prong of the <u>Stern</u> test in that it first arose in state court and is based on state law, it passes the second prong because it attacks the enforceability of the loan documents, the basis for the proof of claim.  As such, this claim will necessarily be resolved in the claims allowance process and constitutes a core proceeding.  As a core proceeding, the court

will issue a final ruling on whether BOA and Joyner fraudulently induced TP to enter into the loan instruments, thereby precluding enforcement of the instruments against TP. The claim will remain in this court for final determination.

### 4. Rescission

In its fourth claim for relief, TP asserts that based on the alleged false and fraudulent representations and concealments by BOA and Joyner, TP may rescind any agreement that it executed with BOA. Much like the claim for fraud in the inducement, this claim fails the first prong of the <u>Stern</u> test because it first arose in state court and is based on state law, but passes the second prong in that it attacks the validity of the loan documents, the basis for the proof of claim. Accordingly, this claim will remain in this court for final determination.

### 5. Breach of Fiduciary Duty

TP contends in its fifth claim, for breach of fiduciary duty, that BOA breached its obligation to act in good faith and with due regard to the interests of TP, to TP's detriment in its decisions throughout the course of the lending relationship. This claim does not stem from the bankruptcy itself because it first arose in state court and is based on state law, and thus does not satisfy the first prong of <u>Stern</u>. Nor is the second prong of <u>Stern</u> satisfied. Although this cause of action arises out of the transactions underlying BOA's claim, it will not affect the calculation of the amount of BOA's proof of claim. As such, this claim would not necessarily be resolved in the claims allowance process. It will be treated as a non-core proceeding and referred to arbitration.

18

### 6.  Negligence and Negligent Misrepresentation

In its "fifth" claim for negligence,[4] TP asserts that BOA and Joyner breached the duty of care in numerous ways during the lending relationship, ultimately causing TP to construct more homes and take on more debt than it would have otherwise without business justification for doing so. Similarly, TP's "sixth" claim for negligent misrepresentation states that BOA and Joyner breached the duty of care to TP by making material misrepresentations during the lending relationship, which TP relied on to its detriment.

As to these claims, the court reiterates its reasoning set out above with respect to the first claim for constructive fraud. The negligence and negligent misrepresentation claims arose prior to the bankruptcy filing, are based on state law, will not affect the calculation of the amount of BOA's proof of claim, and therefore do not satisfy either the first or second prong of Stern. These claims will be treated as non-core proceedings, and referred to arbitration.

### 7.  Tortious Interference

TP further contends that BOA and Joyner essentially managed TP and did not provide promised financing, thereby interfering with TP's obligations on contracts with other creditors, as well as business opportunities. According to TP, its ability to pay certain other creditors depended on its ability to sell the property it was improperly instructed to develop, and the breakdown in financing caused TP to abandon certain projects midstream or sell incomplete construction at a loss.

---

[4] This is the second "fifth" claim as delineated in the complaint, thus it is actually the sixth claim; the claims that follow in the complaint are similarly misnumbered.

As to this claim as well, the court reiterates its reasoning set out above with respect to the first claim for constructive fraud. The tortious interference claim arose prior to the bankruptcy filing, is based on state law, will not affect the calculation of the amount of BOA's proof of claim, and therefore does not satisfy either the first or the second prong of <u>Stern</u>. It will be treated as a non-core proceeding, and referred to arbitration.

### 8. <u>Breach of Contract/Breach of Covenant of Good Faith and Fair Dealing</u>

In its "eighth" claim, TP asserts that BOA breached its contracts with TP by failing to meet various obligations with regard to funding, administration, disbursement, and renewal of the line of credit. TP further asserts that BOA breached its duty of good faith and fair dealing based on its actions and conduct during the lending relationship. This claim does not stem from the bankruptcy itself because it first arose in state court and is based on state law, and thus does not satisfy the first prong of <u>Stern</u>.

Although this action stems from the transactions underlying BOA's claim, it appears that TP seeks damages in order to augment the estate, rather than a reduction in the amount claimed by BOA. As such, this claim will not affect the calculation of the amount of BOA's proof of claim, and therefore the second prong of <u>Stern</u> is not satisfied. This claim will be referred to arbitration.

### 9. <u>Unfair and Deceptive Trade Practices and Alter Ego/Insider Liability</u>

In its "ninth" claim, TP contends that the actions and conduct of BOA and Joyner during the lending relationship constitute unfair and deceptive trade practices under North Carolina law. TP's "tenth" claim alleges that during the lending relationship, BOA and Joyner exercised dominion and control over TP's business activities to the extent that TP functioned as BOA and Joyner's alter ego,

20

with no power over its own financial affairs.  Each of these claims arose prior to the bankruptcy filing and are based on state law, and therefore fail the first prong of <u>Stern</u>.

Based on the reasoning set out above regarding the first claim for constructive fraud, the court finds that neither of these claims will affect the calculation of the amount of BOA's proof of claim, such that each fails to satisfy the second prong of <u>Stern</u>.  These claims will be treated as non-core proceedings, and referred to arbitration.

10.   <u>Equitable Subordination/Recharacterization</u>

TP contends in its "eleventh" claim for equitable subordination or recharacterization that based on the detrimental nature of BOA and Joyner's conduct during the lending relationship, any debt owed to BOA should be subordinated to the claims of other creditors of TP.  In the alternative, TP requests that the court recharacterize any debt claimed by BOA as equity and a capital investment rather than a loan or line of credit.

Although this claim fails the first prong of the <u>Stern</u> test in that it arose prior to the bankruptcy filing and is based on state law, it passes the second prong because it directly attacks the amount set forth by BOA in the proof of claim.  As such, this claim will necessarily be resolved in the claims allowance process and constitutes a core proceeding.  As a core proceeding, the claim will remain in this court for final determination.

## CONCLUSION

Based on the foregoing, the court finds that the claims for fraud in the inducement, recission, and equitable subordination are core and it will exercise its jurisdiction to render final judgments as to those claims.

The claims for constructive fraud, fraud, breach of fiduciary duty, negligence, negligent misrepresentation, tortious interference, breach of contract/breach of covenant of good faith and fair dealing, unfair and deceptive trade practices, and alter ego/insider liability are non-core.  The court will stay proceedings as to those claims and refer them to arbitration.

Accordingly, the motion to dismiss is **DENIED**, and the motion to stay is **GRANTED IN PART.**

**SO ORDERED.**

**END OF DOCUMENT**